THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEBRA STRICKLAND, a/k/a Debra Rucks, Defendant-Appellant.

Fourth District No. 4—90—0257

Opinion filed March 29, 1991.

McCULLOUGH, J., specially concurring.

Daniel D. Yuhas and M. Jeffrey Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

The peculiar procedural history of this case requires this court to analyze section 5—6—4 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4), which deals with both revocations and modifications of probation, and to distinguish between the procedural requirements involved when the State seeks to have a defendant's probation revoked as opposed to when the defendant's probation is merely modified.

In August 1985, defendant, Debra Strickland, a/k/a Debra Rucks, pleaded guilty to theft of property (a diamond ring) having a value in excess of $300 (Ill. Rev. Stat. 1985, ch. 38, par. 16—1) and was placed on probation for 18 months, subject to certain conditions. These conditions included that she pay court costs of $104.20 in 12 equal monthly

installments, perform 120 hours of public service work, and report to the Champaign County court services department as directed.

In February 1987, the State filed a petition to revoke probation, alleging that defendant had violated the conditions of her probation by making no payments toward court costs, completing no public service, and not reporting to the court services department as directed.

In April 1987, defendant admitted and stipulated to certain allegations of that petition, and the court entered judgment in favor of the State and against defendant.

In May 1987, the court resentenced defendant to probation, but this time the period of probation was 24 months. As conditions of probation, defendant was again ordered to pay court costs within the first 12 months of probation, to perform 120 hours of public service work, and to report to the court services department as directed. As an additional condition of probation, defendant was ordered to make restitution through the circuit clerk of Champaign County, which was to be paid in full within the first 12 months of probation. The amount of restitution, however, was not determined at that time.

In March 1989, a hearing on the amount of restitution was held. Defendant appeared personally and with her counsel. The State's Attorney recited a stipulation (which the court accepted) that defendant's restitution for the ring should be in the amount of $1,500. The court and counsel agreed that because defendant's probation was due to expire in May 1989, the term of her probation would have to be extended so that she would have time to pay the restitution ordered. The prosecutor suggested the court set a hearing at some future date to assess compliance with the restitution order and, if necessary, to take evidence at that hearing regarding defendant's ability to pay restitution. Defendant's counsel agreed, and defendant's probation was extended for an additional three years, until May 1992. The court noted that the only condition of defendant's probation for the next three years would be the payment of restitution. The March 1989 hearing concluded with the following statement by the trial court: "And for that specific purpose, cause continued to September 27, 1989—that's six months—at 9:30 a.m. for a status report on restitution." An amended certificate of probation was entered on that date, consistent with the orders stated in open court.

Two weeks prior to the September 27, 1989, "status hearing," the court services department submitted a "probation violation report" (report) to the court and counsel, which read in part as follows:

"Regarding the matter of payment of restitution: To date, Ms. Rucks has made no payments whatsoever, with a balance due

of $1,500.00. On 09/12/89 Ms. Rucks contacted this officer by phone. She stated that she will make no payments for restitution now or in the future, further indicating that she has requested that restitution be discharged in bankruptcy proceedings."

At the hearing on September 27, 1989, the prosecutor referred to the report and stated, "It's clear to me that we have \*\*\* the best case I have ever seen for a willful disregard for the Court's Order, and I want to proceed accordingly." Defendant's counsel stipulated to the accuracy of the report and indicated defendant was ready to testify regarding her inability to pay restitution. In response, the prosecutor stated the following:

"Judge, I don't know whether I am seeking to have the probation here granted to be terminated and have a resentencing on the matter. I suppose it may be that I'll have to file an official Petition. As such, I think this is a status hearing. The evidence is clear from the report here for the court to consider. This is a classic case of a willful disregard of the Court's Order to pay restitution. And we want to act accordingly."

The prosecutor never told the court what he thought "acting accordingly" would be.

After noting that the parties had stipulated to the report, the court permitted defendant to testify in her own behalf. She described in some detail her limited financial resources and her intention to seek legal aid to file for bankruptcy. No other evidence was presented. At the conclusion of the hearing, the prosecutor stated the following: "[M]y position is that I'd ask the Court to \*\*\* enter an order to vacate this probation and to allot it for a re-sentencing \*\*\*. She might even be subject to, and may be a great candidate, for Intensive [probation supervision (IPS)] care, because they would look to her needs as well as would look to her needs day to day to day to find out exactly what we are dealing with here."

Defendant's counsel disagreed with the State that defendant's failure to pay restitution had been wilful, arguing instead that defendant was "a woman struggling to get some sort of ability to survive." Defense counsel further stated that she thought there was no need for defendant to be on IPS because defendant was consulting with social services agencies that might be able to help her and there was "no need to burden [IPS] with that."

After the court reviewed the evidence and arguments, it stated the following:

"Based on everything that I've indicated, and plus the fact that it's been established that Ms. Strickland has not paid one penny of this restitution, plus her statements of her future intent not to pay any, I find that she's in violation of probation. And I'm scheduling this matter for re-sentencing to November 2nd, 1989, at 11 A.M. Champaign County Court Services Officer to prepare Pre-Sentence Report and IPS Suitability Study."

At the hearing on November 2, 1989, defendant was present personally and by her counsel. The court began the hearing by stating, "Cause called for re-sentencing. Pre-Sentence Report on file and read by the Court." Both counsel indicated they had received that report and that neither was aware of any factual inaccuracies in it. Neither party offered any evidence. The prosecutor then stated the following:

"When we were here the last time and we had the hearing and the probation was revoked, it was my position then that this Defendant had actually just, in essence, thumbed her nose with respect to the condition of probation here, of restitution. It appears that she continues in that position with respect to not even seeking to qualify for the suitability with respect to [IPS]. And I'm asking the Court to sentence this Defendant to three years in the Department of Corrections."

In response, defendant's counsel argued that a more appropriate course of action for defendant would be a form of probation in which there was mandatory counseling to address the many problems in her life. At the conclusion of the hearing, the court entered the following order:

"I'll resentence the Defendant to a period of probation of two years, subject to the usual statutory terms and conditions, and specifically subject to the terms and conditions of [IPS] with the emphasis on obtaining and maintaining full-time employment and payment toward restitution. Amended order and Certificate of Probation to be entered."

On December 18, 1989, the State filed a petition to revoke probation, alleging that defendant violated curfews on various dates, failed to report to the IPS office as directed, failed to submit a urine sample as directed by the IPS office, failed to cooperate with employment searches, and failed to contact the probation officer as directed to begin public service scheduling. The petition also alleged that defendant committed the offense of disorderly conduct when she placed her face within inches of the face of Robert Schwieter, her IPS probation officer, and "shouted at him in such a manner as to disrupt the operation

of the probation office," to alarm or disturb Schwieter, and to provoke a breach of the peace.

On January 31, 1990, the court held a hearing on that petition and entered a finding in favor of the State and against defendant.

On March 16, 1990, a resentencing hearing was held, and defendant was sentenced to the Illinois Department of Corrections for a term of three years, with no credit for the time spent on probation when not incarcerated.

On appeal, defendant raises no issue regarding the January 31, 1990, and March 16, 1990, proceedings. Instead, defendant argues that the trial court's order of September 27, 1989, must be reversed because the evidence was insufficient to establish that defendant's failure to pay restitution was wilful. Defendant further argues that this court may review the trial court's orders of September 27, 1989, because the trial court failed to admonish defendant, when she was resentenced to a term of IPS on November 2, 1989, that she had a right to appeal the court's judgment. The State responds that the trial court's findings on September 27, 1989, were not against the manifest weight of the evidence. In order to resolve these issues, this court must analyze the September 27 and November 2 proceedings in light of the applicable statutory provisions.

■■ ■ Section 5—6—4 of the Code governs proceedings involving the modification or revocation of probation. Subsection (a) of that section sets forth the procedures to be followed when a petition is filed alleging a violation of a condition of probation (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(a)). Subsection (c) provides that the State has the burden of going forward with the evidence and proving a violation of a condition of probation by the preponderance of the evidence (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(c)). Subsection (c) further requires that the evidence in probation revocation proceedings be presented in open court with the right of confrontation, cross-examination, and representation by counsel (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(c)). Subsection (d) provides that probation shall not be revoked for failure to comply with conditions which impose financial obligations unless that failure is due to a probationer's wilful refusal to pay (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(d)). Subsection (e) provides that if the court finds a violation of probation to have occurred, it may continue defendant on the existing sentence, with or without modifying or enlarging the conditions, or may impose any other sentence that was available at the time of the initial sentencing (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(e)).

■ In contrast to the above subsections, which deal with *revocation* of probation and the procedural requirements thereof, subsection (f) deals with *modification* of probationary conditions and states the following: "The conditions of probation *** may be modified by the court on motion of the probation officer or on its own motion or at the request of the offender after notice and a hearing." Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(f).

When the proceedings in the present case are considered in light of the foregoing statutory provisions, it becomes apparent that both the trial court and counsel misconstrued the nature of the September 27 and November 2 proceedings. At the September 27 hearing, the prosecutor termed the defendant's noncompliance with probationary conditions a "classic case" of wilful disregard of the court's order and suggested that the court "proceed accordingly." The prosecutor also indicated at the beginning of the hearing that he was unsure whether he was seeking to have probation terminated and defendant resentenced, stating, "I suppose it may be that I'll have to file an official petition." Later in that same proceeding, after defendant testified, the prosecutor argued that the court should "enter an order to vacate this probation and to allot it for a resentencing." Defendant's counsel did not challenge the prosecutor's remarks other than to point out that defendant's failure to make payments was not wilful. At the conclusion of the September 27 hearing, the court entered a finding that defendant was "in violation of probation." The matter was then scheduled for resentencing on November 2, with the court services department directed to consider defendant's suitability for IPS.

What is most significant about this series of events is that prior to the September 27 hearing, there was no petition to revoke defendant's probation on file. The *only* reason a hearing was held on that date is that the court, in March 1989, set the cause for a "status hearing" to determine defendant's compliance, as of September 1989, with the probationary condition that she pay restitution.

■ A condition precedent to the revocation of a defendant's probation is that there must first be on file a petition to revoke probation. We agree with the following statements from *People v. Butler* (1985), 137 Ill. App. 3d 704, 484 N.E.2d 921:

" '[A] defendant is entitled to know the nature of the charge in advance of any hearing wherein he is alleged to have breached the order granting him probation and must be given an opportunity to answer any charge that has been preferred against him.' [(*People v. Price* (1960), 24 Ill. App. 2d 364, 376, 164 N.E.2d 528, 533-34.)] The proof of the violation must be by a

preponderance of the evidence, and the court's determination will be reversed only when it is contrary to the manifest weight of the evidence. [Citation.]

\*\*\* The issue in a probation revocation proceeding is two fold: first, whether a probation violation actually occurred, and second, whether the purposes of defendant's probation are being served by his continued liberty. [Citation.] Because the outcome of the probation revocation proceedings is the curtailment of a defendant's liberty, *due process requires a fair determination that acts forming the basis of the petition occurred,* and that fairness be afforded the defendant during the proceedings." (Emphasis added.) (*Butler,* 137 Ill. App. 3d at 711-12, 484 N.E.2d at 927.)

If a defendant's due process rights require a fair determination that acts forming the basis of the petition occurred, those rights cannot be respected if no petition has been filed. When no petition for revocation is on file, a defendant cannot possibly know the nature of the allegations with which she will be confronted when the State seeks to terminate her probation. See *People v. Followell* (1987), 165 Ill. App. 3d 28, 31, 518 N.E.2d 706, 707.

In the present case, the confusion first manifested by counsel at the September 27 hearing continued at the November 2 hearing, as shown by the prosecutor's remark that, "When we were here the last time [September 27] and we had the hearing [defendant's] probation was revoked \*\*\*. I'm asking the Court to sentence defendant to three years in the Department of Corrections." In response to these remarks, defendant's counsel never pointed out that her client's probation could not have been revoked because no petition for revocation was ever filed. Instead, she simply argued against a prison sentence.

The trial court's belief that defendant's probation had been revoked at the September 27 hearing is shown by its remark at the conclusion of the November 2 hearing that it was going to "resentence the defendant" to a period of probation of two years, subject to the usual statutory conditions, and also subject to the terms and conditions of IPS. As earlier noted, a formal "resentencing" of a defendant on probation may only occur pursuant to section 5—6—4(e) of the Code, when the court has first found, upon a petition duly filed by the State, that the defendant has violated a condition of her probation. Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(e).

If, as a result of the November 2 proceedings, defendant had been sentenced to prison (as requested by the State) pursuant to the erroneous belief of the trial court and the attorneys that on September 27

she had been found to be in violation of a condition of her probation, this court would have reversed that judgment because of the State's failure to first file a petition to revoke her probation. However, despite what the court and counsel may have intended and even said, the *legal effect* of the September 27 and November 2 proceedings was that defendant was *still* on probation (her probation having been extended, at the hearing in March 1989, to May 1992); only the terms of her probation had been modified. The following question then arises: Were the September 27 and November 2 hearings sufficient to authorize the court to *modify* defendant's probation? We hold that they were.

■ Section 5—6—4(f) of the Code provides that a defendant's probation may be modified "by the court on motion of the probation officer or on its own motion or at the request of the offender after notice and a hearing." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(f).) The grounds for the court's actions at the September 27 and November 2 hearings, which resulted in the modification of defendant's probation, were contained in the probation violation report of defendant's probation officer, which was filed September 13. The September 27 hearing revealed that defendant, her counsel, and the prosecutor were all aware of that report, and defendant's counsel stipulated to its accuracy before calling defendant to testify about her difficulties complying with probationary conditions. Under these circumstances, the requirements of section 5—6—4(f), "notice and a hearing" before a defendant's probation can be modified, were clearly met.

■ Accordingly, at the conclusion of the September 27 hearing, the trial court would have been fully justified in entering an order modifying defendant's probation. That the court waited until a second hearing was held, on November 2, before formally modifying defendant's probation is of no moment; by so waiting, the court merely insured that it had the benefit of an updated probation report when it finally decided on the modifications ordered.

■ As opposed to a probation *revocation* proceeding, which implicates many of the procedural concerns of criminal due process (see *Butler*, 137 Ill. App. 3d at 711-12, 484 N.E.2d at 927; *Followell*, 165 Ill. App. 3d at 31, 518 N.E.2d at 707), the process due a defendant in a probation *modification* proceeding requires only "notice and a hearing." The State has neither the burden of going forward with the evidence nor of proving the desirability of the modification it may be seeking. These views are in accord with the recent decision of the supreme court in *People v. Dinger* (1990), 136 Ill. 2d 248, 257-58, 554 N.E.2d 1376, 1379, wherein the court stated the following:

"[M]odification of probation may be made upon the petitioner's showing that there are sufficient reasons to warrant modification of the sentence. (See Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—4.) However, as already discussed, revocation of probation may be made only upon the State's proof by the preponderance of the evidence that a violation of a condition of probation occurred. [Citations.] Further, a procedure providing for the modification of the conditions of probation presumes that the underlying sentence will still exist after the procedure has been completed. Yet, when the court revokes an offender's probation, no conditions of that probation remain and the offender must be resentenced on the original charge."

Consistent with *Dinger*, we note that defendant's underlying sentence of probation was still in existence after the hearings on September 27 and November 2 had been held.

 That defendant's probation in the present case was modified from minimal probationary supervision to intensive probation supervision does not change our conclusion, even though we recognize that, as its name implies, defendant's probationary conditions became considerably more "intense" than they were before. An example of just how much more intense is shown by the following three conditions (chosen from a total of 20) which were set forth in the defendant's IPS certificate:

"Report in whatever fashion as directed in writing by a Probation Officer to the Champaign County Court Services Department, including a requirement that the defendant may be required to report as often as daily in person as early as 7:30 a.m.

Comply with all curfew conditions established in writing by the Probation Officer requiring the defendant to be and to remain at certain places during certain times. Such conditions may also restrict the number and identity of others persons permitted to be present with the defendant.

Not be present any place, business, building, park, apartment, residence, or other specified location of whatever designation at which place or places his presence has been prohibited in writing by a Probation Officer."

While we recognize that these conditions are onerous, we are not prepared to equate them with a change in defendant's probationary conditions leading to her incarceration. When a defendant is going to be incarcerated as a result of proceedings regarding her behavior while on probation, we hold that such incarceration may be ordered only af-

ter a petition to revoke her probation has been filed and a finding in favor of the State based thereon has been made. However, all other modifications of a defendant's probation under section 5—6—4(f) of the Code short of incarceration do not implicate the same procedural requirements. This is because defendant's "underlying sentence of probation" will still exist after the modification has been ordered. See *Dinger*, 136 Ill. 2d at 257, 554 N.E.2d at 1379.

■■■ Support for this conclusion is found in *People v. Ramos* (1990), 138 Ill. 2d 152, 159, 561 N.E.2d 643, 647, wherein the supreme court held that a defendant's period of home confinement, while released from custody on a recognizance bond, was not time for which the defendant should have been granted credit, under section 5—8—7(b) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—7(b)), on the length of the prison term he subsequently received. We find that the supreme court's treatment in *Ramos* of home confinement (which is obviously as substantial a restriction on a defendant's freedom as is the most intense of the IPS conditions) demonstrates that the supreme court distinguishes between actual incarceration on the one hand and all other limitations on a person's liberty, such as probationary conditions, on the other.

Having determined that the September 27 and November 2 proceedings in the present case involved a modification of defendant's probation, not its revocation, this appeal presents us with two more issues to resolve. First, because defendant's probation was not revoked as a result of the September 27 and November 2 hearings, but as a result of the hearings on January 31, 1990, and March 16, 1990, can this court nonetheless review the September 27 and November 2 proceedings? Second, assuming that we can review the September 27 and November 2 proceedings, did the trial court abuse its discretion in modifying defendant's probation?

■■■ Defendant argues that this court can review the September 27 and November 2 proceedings because, after the court placed defendant on IPS at the conclusion of the November 2 hearing, the court failed to advise defendant of her right to appeal that action. Because of that failure, defendant maintains that she should not be held to have waived appellate review of the propriety of the court's order. We agree.

Supreme Court Rule 605(a) reads in part as follows:

"In all cases in which *** a sentence of probation or conditional discharge has been revoked or the conditions attached to such a sentence have been modified, except in cases in which the judgment and sentence are entered on a plea of guilty, the

trial court shall, at the time of imposing sentence or modifying the conditions of the sentence, advise the defendant of his right to appeal, of his right to request the clerk to prepare and file a notice of appeal, and of his right, if indigent, to be furnished, without cost to him, with a transcript of the proceedings at his trial or hearing, and, [in cases like the present one], *** of his right to have counsel appointed on appeal. The trial court shall also advise him that his right to appeal will be preserved only if a notice of appeal is filed in the trial court within 30 days from the date of the sentence." (134 Ill. 2d R. 605(a).)

When a trial court has appropriately discharged its duties under Rule 605 and a defendant has not filed a notice of appeal within 30 days, the defendant is barred from appealing the sentence imposed. The corollary of that rule is that when, as here, a trial court has not complied with the requirements of Rule 605, a defendant should not be barred from appealing the sentence in question. (See *People v. Balsar* (1989), 178 Ill. App. 3d 876, 880, 533 N.E.2d 1140, 1142.) Accordingly, we will consider defendant's argument that the trial court's action on September 27 and November 2 was improper.

 █ As was the case at the trial level, counsel for both parties on appeal have called the September 27 and November 2 hearings probation revocation proceedings. As we explained earlier in this opinion, that designation is incorrect. This misdescription accounts for defendant's argument on appeal that the trial court committed error when, at the September 27 hearing, it found the evidence sufficient to establish that defendant had wilfully failed to pay restitution. This argument would be appropriate if the proceedings were in fact probation revocation proceedings and the finding of which defendant complains was necessary in order to authorize further court action. However, because the September 27 and November 2 proceedings involved merely the modification of defendant's probation, the allegedly objectionable findings were not necessary. Instead, the question for the trial court at the September 27 and November 2 proceedings should have been whether, in the court's discretion, a modification of defendant's probation would be desirable.

On appeal, the standard of review of a decision merely modifying a defendant's probation is whether the trial court's action constitutes an abuse of its discretion. Neither party to this appeal has directly addressed this issue. However, based upon our review of the record of the September 27 and November 2 proceedings, we can resolve it without the parties' doing so. We find that there was ample justification for the action taken by the trial court in modifying defendant's

probation by placing her on IPS. On this record, the trial court's action was not an abuse of discretion.

Because the sole issues presented on appeal concern the September 27 and November 2 proceedings, we need not address the subsequent proceedings in January and March 1990 in which defendant's probation was revoked and she was sentenced to three years in the Department of Corrections.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

KNECHT, J., concurs.

JUSTICE McCULLOUGH, specially concurring:

The majority states that when the trial court has not complied with the requirements of Rule 605, a defendant is not barred from appealing the sentence in question. For that reason, the majority allows the defendant to challenge the propriety of the final order entered November 2, 1989. The defendant filed a timely notice of appeal from the trial court's order of March 16, 1990, not the order of November 2, 1989. She cannot challenge the order of November 2, 1989, unless either the provisions of Rule 606(c) (134 Ill. 2d R. 606(c)) are complied with by defendant or this court *sua sponte* grants a late notice of appeal.

The issues raised by defendant are not of constitutional dimension and, unless this court addresses the granting of the late notice of appeal issue, the defendant's appeal should be dismissed without addressing the merits.

As stated in *People v. Covington* (1970), 45 Ill. 2d 105, 108, 257 N.E.2d 106, 108:

> "[T]he allegation of the petition that the court failed to give defendant such advice did not raise a question of constitutional dimension. Our rule stems from the dictates of good practice rather than constitutional command, and where the question has arisen it has been held that the failure of a court to advise of the right to appeal is not a denial of due process or equal protection."

In *People v. Schultz* (1975), 27 Ill. App. 3d 844, 327 N.E.2d 334, defendant was sentenced on February 20, 1970, to three years' probation. Defendant's probation was subsequently revoked and he was sentenced to the penitentiary in November 1972. In March 1973, the

appellate court allowed a late notice of appeal as to the sentence entered in November 1972. Defendant first sought to attack the February 20, 1970, sentence asserting the trial court failed to properly admonish him. The appellate court stated:

> "[P]ursuant to Supreme Court Rule 606(c), this court vested itself with jurisdiction only as to the revocation of probation and sentencing proceedings which had occurred in November, 1972. Consequently, we are without jurisdiction to consider the defendant's first contention." *Schultz*, 27 Ill. App. 3d at 848, 327 N.E.2d at 337.

This appeal may be heard on the merits because the issues presented and record show an excuse for failure to file a timely notice of appeal pursuant to Supreme Court Rule 606(b). (134 Ill. 2d R. 606(b).) The time limitations of Supreme Court Rule 606(c) have been met. As stated by this court in *In re K.M.* (1979), 70 Ill. App. 3d 915, 919, 389 N.E.2d 188, 190-91:

> "[W]e interpret the decisions to require us to hear appeals covered by Rule 606(b) and (c) when the ends of justice would be served thereby and the appellant has shown an intent to appeal during the 6-month period by filing a document so indicating but fails to precede the filing with a request for leave to do so."

*Balsar*, cited by the majority, does not stand for the proposition, a defendant, without complying with the time limitations of Supreme Court Rule 606 (134 Ill. 2d R. 606), can at any time appeal a final order because the trial court failed to admonish him of his right to appeal.

The record does show a sufficient basis to permit the trial court to modify the conditions of probation and, for that reason and the reasons set forth above, the trial court should be affirmed.